IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID L. SIMMS,                        :
                                       :
         Plaintiff                     :        CIVIL NO. 3:CV-12-2276
                                       :
    v.                                 :
                                       :        (Judge Conaboy)
                                       :
PA. DEPT. OF CORRECTIONS, ET AL.,:
                                       :
         Defendants                    :
_____

**MEMORANDUM**
**Background**

    David L. Simms, an inmate presently confined at the State

Correctional Institution, Waymart, Pennsylvania (SCI-Waymart),

initiated this <u>pro</u> <u>se</u> civil rights action pursuant to 42 U.S.C. §

1983.  Named as Defendants are the Pennsylvania Department of

Corrections; SCI-Waymart; DOC Secretary John E. Wetzel; and the

following SCI-Waymart employees: Superintendent Wayne J. Gavin;

Unit Manager L. White; Counselor David Chapel; and Deputy

Superintendent Ronda Ellett.  Accompanying the Complaint is a

request for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.  <u>See</u> Doc. 3.

    It is initially noted that the claims raised in the Complaint

are set forth in a rambling narrative which at times is incapable

of  comprehension.  Simms describes himself as having a handicap

1

which requires him to use a cane.[1]  Plaintiff states that on July

11, 2012 he was exiting an SCI-Waymart shower when he slipped and

fell in a puddle of water injuring his left hand, arm, and shoulder

as well as the left side of his head.[2]  Simms acknowledges that he

was taken by stretcher to the prison's medical department where he

remained overnight.  The next day Plaintiff was taken to an outside

hospital where x-rays were taken of his left hand, arm and

shoulder.  According to the Complaint, those tests revealed that

Simms had not suffered any bone fractures.  After his hand was

bandaged, Plaintiff was returned to the prison.

It is generally alleged that Simms was not provided with

adequate medical treatment for his swollen left hand.  See Doc. 3,

p. 3.  Plaintiff further contends that members of the prison

medical staff, including non-defendant Joann Loomis, have verbally

harassed him regarding his care and tried to force him "too [sic]

---

[1]  The cause of Plaintiff's alleged handicap is not explained
but the Complaint does indicate that Simms was prescribed pain
medication while previously confined at SCI-Camp Hill and SCI-
Graterford.  See Doc. 3, ¶ II

[2]  Plaintiff states that "their [sic] was no handicap signs in
shower or outside shower no handicap stall for any man that was
handicap too shower."  Doc. 3, p. 11.
     However, Simms does not allege that his fall, which he
repeatedly describes as being an accident, resulted from those
conditions or that any of the named Defendants were responsible for
any condition which caused his fall.  Moreover, Plaintiff
acknowledges that he continued to use the SCI-Waymart showers
without incident after his July 11, 2012 fall.  Based upon those
circumstances, the Complaint cannot be construed as setting forth a
discernible conditions of confinement claim.

take medication for the wrong reason."[3]  Id.

Plaintiff additionally claims that Unit Manager White and Counselor Chapel tried to force him to "do some kind of work."[4] Id.  The Complaint also appears to be alleging that prison officials including White and Chapel "messed" with Simms' parole eligibility through the employment of forged documents.  Id. at p. 12.  Simms next maintains that he was subjected to sexual harassment in that White and Chapel would question other prisoners as to what Plaintiff did when he was in the bathroom and showering area and that on more than one occasion male prison staff allegedly watched him getting dressed and undressed in an effort to undermine his claim that his physical injuries/condition prevented him from performing a prison job.  Plaintiff's final contention asserts that because he refused to work, Chapel and White purportedly placed him in a two person cell when he should have been housed in a dorm.[5] Plaintiff seeks monetary damages as relief.

## Discussion

---

[3]  Sims makes a vague claim that medical staff improperly ended therapy which he was receiving for his left side injuries. It is unclear whether said therapy predated the alleged July 11, 2012 slip and fall or whose was responsible for the termination of the therapy.

[4]  Plaintiff also indicates that he was placed on refusal to work status which caused him to lose outside recreation yard privileges..

[5]  It is also alleged that Plaintiff was issued a misconduct report

Pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Pro se parties are not, however, free to ignore the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8 requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests, (2) the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief sought by the pleader.

Although there is not a heightened pleading standard in civil rights cases, a § 1983 complaint in order to comply with Rule 8, must contain at least a modicum of factual specificity, identifying the particular conduct of each defendant that is alleged to have harmed the plaintiff, so that the court can determine that the complaint is not frivolous and a defendant has adequate notice to frame an answer.[6] A civil rights complaint complies with this requirement if it alleges the conduct violating plaintiff's rights, the time and the place of that conduct, and the identity of the

---

[6] The United States Supreme Court in Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 167 (1993), held that it was improper to apply heightened pleading standards to § 1983 actions. The Court noted that a § 1983 complaint need only to comply "with the liberal system of 'notice pleading' set up by the Federal Rules." Id.

responsible officials.

**DOC**

One of the named Defendants is the DOC. The United States Supreme Court has ruled that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978). Our Court of Appeals similarly concluded that the Pennsylvania Board of Probation and Parole could not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court reiterated its position that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court. The Court noted that a § 1983 suit against a state official's office was "no different from a suit against the State itself." Id. at 71. "Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." Howlett v. Rose, 496 U.S. 356, 365 (1990).

After Will, our Court of Appeals held that in determining whether a state agency is entitled to Eleventh Amendment immunity, a federal court should consider: whether the state would be responsible for the payment of any judgment rendered against the

5

agency; the source of the agency's funding; and the degree of autonomy enjoyed by the agency, as well as other similar factors. Bolden v. Southeastern Pennsylvania Transp. Auth., 953 F.2d 807, 818 (3d Cir. 1991).

Accordingly, since the DOC is clearly an agency or arm of the Commonwealth of Pennsylvania, it is not a person and may not be sued under § 1983. See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000) (a state prison and a department within the prison are not persons and may not be sued under § 1983).

**SCI-Waymart**

SCI-Waymart, the Plaintiff's present place of incarceration, is also named as a Defendant. A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

It is well recognized that a prison or correctional facility is not a person for purposes of civil rights liability. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995).

6

Pursuant to the above standards, SCI-Waymart is clearly not a person and therefore not subject to civil rights liability.  <u>See</u> <u>Thompkins v. Doe</u>, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000).

**<u>Personal Involvement</u>**

With respect to the claims against DOC Secretary Wetzel, Superintendent Gavin, and Deputy Superintendent Ellett, civil rights claims cannot be premised on a theory of <u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure.  <u>See</u> <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259

F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  <u>See</u> <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Pursuant to those decisions, any attempt by a prisoner to establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  <u>See also</u> <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v.</u> <u>Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

A review of the Complaint shows that there are no allegations that Wetzel, Gavin and Ellett were personally involved in the day to day supervision of Plaintiff at SCI-Waymart or in his medical care.  Rather, it appears that Plaintiff is attempting liability against those three Defendants based upon either their respective supervisory capacities or their handling of his institutional grievances.

8

Pursuant to the standards announced in <u>Rode</u> and <u>Hampton</u>, Plaintiff's action to the extent that it seeks to establish liability against DOC Secretary Wetzel, Superintendent Gavin and Deputy Superintendent Ellett solely based upon their respective supervisory capacities within either the DOC or SCI-Waymart cannot proceed. Such <u>respondeat</u> <u>superior</u> type assertions are simply insufficient for establishing civil rights liability. Likewise, any attempt by Simms to set forth claims against those three Defendants solely based upon any responses or lack of action to his administrative grievances is equally inadequate under <u>Flick</u> and <u>Alexander</u>. Accordingly, a viable claim has not been stated against Defendants Wetzel, Gavin, and Ellett.

**Verbal Threats**

Plaintiff alleges that Unit Manager White and Counselor Chapel subjected him to verbal harassment in an attempt to force the prisoner to do "some kind of work." Doc. 1, ¶ II, p. 3.

The use of words generally cannot constitute an assault actionable under § 1983. <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 n.7 (2d Cir.); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); <u>Murray v. Woodburn</u>, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer

do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal threats voiced against Inmate Simms were accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and

Douglas.  More importantly, it is not alleged that any of the alleged threats were accompanied by any physically intrusive behavior.  Given the vague circumstances described by Plaintiff, the purported verbal harassment attributed to White and Chapel was not of the magnitude to shock the conscience as contemplated by this Court in  S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001) and thus, did not rise to the level of a constitutional violation.

**Housing Assignment**

Plaintiff asserts that Defendants Chapel and White placed him in a two person cell when he should have been placed in a dorm.

A prisoner's disagreement with "evaluations and opinions regarding him" are insufficient to set forth an actionable constitutional claim. Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979).  In addition, the United States Supreme Court has held that a federal inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); James v. Reno, 39 F. Supp. 2d 37, 40 ( D.D.C. 1999)(citation omitted) (a federal inmate "has no liberty interest in his security classification").

Moreover, any lack of change in custody classification and institutional placement did not result in the type of atypical or significant hardship necessary to establish a constitutional

violation under <u>Sandin v. Conner</u>, 515 U.S. 472, 480-84 (1995).[7]
<u>See</u> <u>James v. Reno</u>, 39 F. Supp. 2d 37, 40 (D.D.C. 1999).
Accordingly, Plaintiff's claim that he was improperly assigned to a two man cell does not adequately set forth a claim.

**Parole Consideration**

It is also vaguely alleged that Defendants White and Chapel "messed" with Plaintiff's parole eligibility through the use of forged documents.[8]  Doc. 3, p. 5.

Inmates challenging the duration of their confinement or seeking earlier or speedier release must assert such claims in a properly filed habeas corpus petition.  <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1975), <u>Telford v. Hepting</u>, 980 F.2d 745, 748 (3d Cir.), <u>cert</u>. <u>denied</u> 510 U.S. 920 (1993).  Federal habeas corpus review is the appropriate remedy when "the deprivation of rights is such that it necessarily impacts the fact or length of detention."  <u>Leamer v. Fauver</u>, 288 F.3d 532, 540 (3d Cir. 2002).  The Third Circuit Court of Appeals in <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 241 (3d Cir. 2005), reiterated that federal habeas corpus review allows a prisoner "to challenge the 'execution' of his sentence."

Accordingly, to the extent that Simms is seeking his release from confinement or otherwise challenging the legality of any

---

[7] The United States Supreme Court in <u>Sandin</u> shifted the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  <u>Id</u>. at 481.

[8]  The Complaint indicates only that White Chapel and their parole staffer forged a letter.  <u>See</u> Doc. 3, p. 12.

parole review, such requests for injunctive relief are not properly asserted in a civil rights complaint under the standards announced in <u>Preiser</u> and <u>Leamer</u>.  <u>See</u> <u>generally</u> <u>Georgevich v. Strauss</u>, 772 F.2d 1078, 1086 (3d Cir. 1985) (civil rights claims seeking release from confinement sound in habeas corpus).  Likewise, a civil rights claim for declaratory relief "based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable" in a § 1983 civil rights action.  <u>Edwards v. Balisok</u>, 520 U.S. 641, 646 (1997).

   With respect to any claims by Plaintiff for monetary damages against White and Chapel based upon parole interference, in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid", until the Plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  <u>Id</u>. at 486-87.  Thus, any request by Plaintiff for monetary damages with respect to alleged parole eligibility interference is premature because Simms cannot maintain a cause of action for unlawful imprisonment until the basis for that claim, the underlying parole review, has been rendered invalid.  Pursuant to the above

discussion, Plaintiff's claim of parole interference cannot proceed in a civil rights action at this juncture.

**Sexual Harassment**

Plaintiff contends that male prison staff and other inmates spied on him as he was showering and going to the bathroom in an effort to establish whether he was able to perform a prison work assignment. The Complaint characterizes this conduct as being sexual harassment which was undertaken with the approval or at the direction of Defendants White and Chapel.

Clearly, privacy is "greatly curtailed by the nature of the prison environment." <u>Florence v. Bd. of Chosen Freeholders of the County of Burlington</u>, 621 F.3d 296, 301 (3d Cir. 2010). The Fourth Amendment's prohibition on unreasonable searches means that searches which constitute "calculated harassment unrelated to prison needs" are not permissible. <u>Hudson</u>, 468 U.S. at 530; <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993); <u>Proudfoot v. Williams</u>, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992) (stating that searches conducted for 'calculated harassment' may constitute an Eighth Amendment violation); <u>Hughes v. Smith</u>, 237 Fed. Appx. 756, 759 (3d Cir. 2007) (a single pat-down frisk which was not accompanied by any sexual comments during which the correctional officer allegedly touched the prisoner's testicles through his clothing did not rise to the level of a constitutional violation even though the officer had made sexual advances in the past).

14

In the present case there is no claim that the alleged observations attributed to the prison staff were undertaken for the purpose of any sexual gratification. Plaintiff also does not allege that the challenged conduct was accompanied by any remarks of a sexual nature or that he was subjected to any inappropriate touching. There is also no claim that the alleged actions were an effort to subject Simms to psychological harm.

Rather, Plaintiff contends that prison officials were observing him to investigate his claim that his physical limitations preventing from performing work inside the prison. It is alleged only that the conduct at issue was limited to observations as to Plaintiff's mobility/dexterity and did not include any sexual aspect. Based upon an application of the standards set forth above to Plaintiff's own description of the challenged conduct, it is apparent that a viable claim of sexual harassment has not been stated.

## Deliberate Indifference

Plaintiff also asserts that there was deliberate indifference to his medical needs. It is noted that based upon the disjointed wording of his complaint it is unclear as to whether Simms is referencing the care provided after his July 11, 2012 fall, the care provided to him for his physical ailments which predate his slip and fall, or both. Moreover, none of the Defendants named in this matter are described as being members of the SCI-Waymart medical staff.

The Eighth Amendment "requires prison officials to provide

basic medical treatment to those whom it has incarcerated." Rouse
v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v.
Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth
Amendment medical claim, an inmate must allege acts or omissions by
prison officials sufficiently harmful to evidence deliberate
indifference to a serious medical need.  See Spruill v. Gillis, 372
F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty.
Correctional Facility, 318 F.3d 575, 582 (3d Cir.  2003).  In the
context of medical care, the relevant inquiry is whether the
defendant was: (1) deliberately indifferent (the subjective
component) to (2) the plaintiff's serious medical needs (the
objective component).  Monmouth Cty. Corr. Inst. Inmates v.
Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d
158, 161 (3d Cir. 1979).

     A serious medical need is "one that has been diagnosed by a
physician as requiring treatment or one that is so obvious that a
lay person would easily recognize the necessity for a doctor's
attention."  Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26,
2009)(quoting Colburn, 946 F.2d at 1023);  Monmouth Cty. Corr.
Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton
infliction of pain results as a consequence of denial or delay in
the provision of adequate medical care, the medical need is of the
serious nature contemplated by the Eighth Amendment."  Young v.
Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth
Cty. Corr. Inst. Inmates, 834 F.2d at 347).

     As discussed earlier, the Complaint references injuries

relating to the July 11, 2012 slip and fall as being to the Plaintiff's left side. The Plaintiff's physical condition pre-dating that incident and which resulted ih his being required to use a cane are not described in the Complaint.

There is no indication in the Complaint that any of thoe July 11, 2012 related injuries seriously impacted Plaintiff's health or were of a prolonged duration. Simms also makes no contention that his purported injuries required any medical attention following the taking of negative x-rays at a local hospital.

A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. Plaintiff offers no facts to show that his condition persisted beyond a short duration, had more than a brief negative impact on his daily life, or required any subsequent medical care of any type. Even affording liberal construction to the pro se Complaint, it cannot be established that the July 11, 2012 injuries generally identified by Plaintiff were anything more than minor, temporary ailments. See generally Stankowski v. Farley, 251 Fed. Appx. 743, 748 (3d Cir. 2007)(minor injuries do not satisfy serious medical need). Simply put, the general allegations set forth in the Complaint do not establish that Plaintiff had any serious medical need stemming from the July 11, 2012 accident as contemplated under Estelle. In light of Plaintiff's failure to describe his pre-existing condition, it cannot be determined as to whether Simms had a

serious medical need prior to July 11, 2012.

Regardless of the issue of whether the serious medical need requirement has not been satisfied by the sketchy allegations raised in the Complaint, it is nonetheless apparent that Simms has failed to satisfy the second prong of the deliberate indifference analysis.

The Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.;  Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical

18

reasons.")

Plaintiff acknowledges that he was kept overnight in the prison infirmary following his fall and was transported to an outside hospital the following day where diagnostic testing (x-rays) determined that he had not suffered any fractures and could be returned to the prison.

Simms does not contend that any of his alleged slip and fall related injuries were aggravated due to any failure or delay in being given treatment. Rather, there is no claim that any additional treatment was ever warranted, prescribed, or recommended. The Complaint also does not contend that Plaintiff required any other care whatsoever following his return to SCI-Waymart. While Plaintiff makes a bald assertion that therapy was prematurely stopped, there is no discernible claim that any of the individuals defendants were responsible for that determination. The failure of Simms to allege that he required any type of treatment which was not provided undermines his bald assertion that he was a victim of medical deliberate indifference.

Moreover, it is undisputed that the individual defendants named in this action are non-medical professionals. The Court of Appeals for the Third Circuit in <u>Durmer</u> added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be

presented.  <u>See</u> <u>id</u>.

Based on the reasoning employed in <u>Durmer</u>, since there are no
facts asserted which could establish that the non-medical
individual Defendants had any personal involvement whatsoever in
Plaintiff's medical treatment and since the Complaint admits that
Simms was receiving care from the SCI-Waymart medical staff as well
as an outside evaluation and testing at an outside hospital, under
the standards announced in <u>Durmer</u> a viable deliberate indifference
claim has not been set forth against the Defendants.

**<u>Prison Job</u>**

Plaintiff also alleges that Defendants White and Chapel
verbally tried to pressure him into performing prison work.  Since
there is no claim in the Complaint that the Plaintiff was ever
actually forced to perform any work within SCI-Waymart, a viable
claim of being forced to work has not been stated.

**<u>Retaliation</u>**

Given the liberal standards applied to <u>pro</u> <u>se</u> submissions, the
Complaint could be construed as partially asserting a vague
allegation that Defendants White and Chapel subjected Simms to
retaliation by assigning him to a two man cell as opposed to a
dormitory.

To establish a Section 1983 retaliation claim, a plaintiff
bears the burden of satisfying three (3) elements.  First, a
plaintiff must prove that he was engaged in a constitutionally
protected activity.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir.
2001).  Second, a prisoner must demonstrate that he suffered some

"adverse action." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the adverse action. Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).[9] See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Based upon a review of the Complaint there are simply no facts which could sufficiently support a claim that Plaintiff's assignment to a two man cell as opposed to a prison dorm was undertaken in retaliation for Simms' prior engagement in a constitutionally protected activity.

## Conclusion

Based upon the reasons set forth above, Simms' complaint is a flagrant violation of Rule 8. It includes inappropriate Defendants and does not give adequate notice of what Plaintiff's claims are and the grounds upon which they rest. Accordingly, it is subject to sua sponte dismissal by the court. Plaintiff is granted leave to file an amended complaint on a limited basis. He may file an amended complaint (1) if he can show that his July 11, 2012, fall

---

[9] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

resulted from an unconstitutional condition of confinement; (2) if he can show there was deliberate indifference to a serious medical need; and/or (3) if he can show his placement in a two man cell was contrary to a medical directive.  See Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

Plaintiff is advised that in order to state a viable civil rights claim each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  Rode, 845 F.2d at 1207.

Simms is reminded that his amended complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the complaint already filed.  The amended complaint should clearly identify each Defendant, set forth the factual substance underlying Plaintiff's claims in short, concise and legible statements, and specify the constitutional claims and relief being sought.[10]  Failure of the Plaintiff to timely submit an

---

[10]  Plaintiff is also advised that in order to state a viable civil rights claim he must make a showing that the conduct complained of was committed by a person acting under color of law and that said conduct deprived him of a right, privilege, or immunity secured by the Constitution or by a statute of the United States.  Cohen v. City of Philadelphia, 736 F.2d 81, 83 (3d Cir. 1984).
    A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of his constitutional rights.  Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990).  This is the personal involvement requirement. Liability may not be imposed under § 1983 on the principle of respondeat superior.  See Rode, 845 F.2d at 1207 (a defendant in a civil rights action must have personal involvement in the alleged wrongs which can be shown through allegations of personal direction or of actual knowledge and acquiescence).

amended complaint or otherwise respond to this Order will result in dismissal of his action for failure to prosecute.  An appropriate Order will enter.

                                   S/Richard P. Conaboy
                                   RICHARD P. CONABOY
                                   United States District Judge

DATED: December 5, 2012

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID L. SIMMS,                          :
                                         :
          Plaintiff                      :       CIVIL NO. 3:CV-12-2276
                                         :
     v.                                  :
                                         :       (Judge Conaboy)
                                         :
PA. DEPT. OF CORRECTIONS, ET AL.,:
                                         :
          Defendants                     :
_____

## ORDER

     AND NOW, THEREFORE, THIS 5th DAY OF December, 2012, in

accordance with the accompanying Memorandum, IT IS HEREBY ORDERED

THAT:


     1.   Plaintiff's in forma pauperis motion is construed as

          a motion to proceed without full prepayment of fees

          and costs and the motion is **GRANTED.**

     2.   Within twenty (20) days of the date of this Order,

          Plaintiff may file and serve an amended complaint

          which is in compliance with Federal Rule of Civil

          Procedure 8(e).[11]

_____

     [11]  Attached to this Order is a form civil rights complaint
which this Court routinely provides to pro se litigants.

24

3.  Failure of Plaintiff to timely submit a proper
    Amended Complaint or otherwise respond to this Order
    will result in dismissal of his action for failure
    to prosecute.

                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge